IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SAKHU MAA TEM HERU,**

      **Plaintiff,**

      v.

      Civil Action 2:17-cv-658
      Chief Judge Edmund A. Sargus, Jr.
      Magistrate Judge Jolson

**STATE OF OHIO, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 29). For the reasons that follow, it is **RECOMMENDED** that the Motion be **GRANTED**.

## I. BACKGROUND

Plaintiff is a state prisoner currently incarcerated at the London Correctional Institution. He is an adherent of the Moorish/Kemetic[1] religion and alleges multiple instances of alleged religious discrimination in violation for the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") when he was a prisoner at Belmont Correctional Institution. The Court has previously summarized the background of this case:

> Plaintiff, a prisoner at Belmont Correctional Institution ("BCI"), initiated this case in the Northern District of Ohio on February 6, 2017, by filing a Notice of Removal. (Doc. 1). In the Complaint, Plaintiff appeared to challenge a 2008 criminal conviction in the Tuscarawas County Court of Common Pleas and asserted claims for genocide, denationalization, unlawful arrest, arbitrary detention, false imprisonment, kidnaping, torture, and cruel and unusual

---

[1] Plaintiff has offered various descriptions of his religious denomination. (*See, e.g.*, Doc. 29-10 at 3 (describing his religion as "Kemetic/Mu'ur; [sic] with branches that reach into all religions influenced by Kemetic/Cushite/Nubian/Indigenous Peoples . . ."); *id.* at 23 (describing his religion as "Kemetic, Nubian-Cushite, Washitaw Moor (Muur)."). For ease of reference, the Court refers to Plaintiff's denomination as Moorish/Kemetic.

punishment, and sought monetary damages. (*See* Doc. 5 at 1). Plaintiff filed a Motion for Leave to Proceed *in Forma Pauperis* on March 13, 2017 (Doc. 2), and an Amended Complaint on April 5, 2017 (Doc. 4). The Amended Complaint appeared to supplement, rather than to supersede, Plaintiff's Complaint. (*See* Doc. 5 at 1).

In a Memorandum Opinion and Order issued on June 2, 2017, District Judge Sarah Lioi observed that Plaintiff's Complaint and Amended Complaint are "largely incomprehensible," consisting "almost entirely of meaningless rhetoric, with random citation to various legal and non-legal sources." (Doc. 5 at 2). Judge Lioi noted that Plaintiff claimed to have removed a closed criminal case from state to federal court to challenge his 2008 criminal conviction for drug trafficking, and added claims in the Amended Complaint pertaining to the practice of his religion at BCI. (*Id*. at 1–2). Plaintiff claimed that BCI Defendants interfered with the practice of his religion by prohibiting him from wearing a fez on certain occasions, denying him meals prepared in accordance with his religious beliefs, and failing to provide religious services for Moorish Kemetic practitioners. (*Id*. at 3).

Judge Lioi dismissed Plaintiff's claims related to his 2008 criminal conviction and his freedom of religion claim against all Defendants except the BCI Warden and Chaplain. (*Id*. at 8). Judge Lioi also found that the proper venue for the claims against the BCI Warden and Chaplain was in this Court. (*Id*. at 7). Consequently, Judge Lioi transferred those claims to this Court. (*Id*. at 8).

(Doc. 13 at 1–2).

The remaining Defendants in this case are Mary Potter and Jeffrey Burger. At the time of the events underlying this case, Defendant Potter was the Deputy Warden of Special Services at Belmont Correctional Institution where she served as Chairperson of the Accommodation Review Committee, (Doc. 29-1, ¶ 4), and Defendant Burger was a Chaplain at Belmont Correctional Institution, (Doc. 29-2, ¶ 4). Three claims remain pending against Defendants Potter and Burger.[2] First, Plaintiff alleges that, on two occasions, correctional staff prevented

---

[2] To the extent Plaintiff's Response in Opposition can be read to attempt to bring a claim for denial of access to religious materials, (*see* Doc. 39-2 at 3–4), the law does not permit him to do so. It is well-settled that a plaintiff cannot amend his complaint in response to a motion for summary judgment. *Miller v. Food Concepts Int'l*, LP, No. 2:13-CV-00124, 2017 WL 1163850, at *17 (S.D. Ohio Mar. 29, 2017); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788–89 (6th Cir. 2005) (affirming district court's refusal to consider new claim raised in response to motion for summary judgment because "to do otherwise would subject defendants to unfair surprise").

2

him from wearing his fez (the "Religious Headwear Claim"). (Doc. 4 at 2–3). Second, Plaintiff alleges that he has been denied kosher meals "as an alternative to both regular meals served to the general population and the vegetarian meals served which both contain harmful Gmo's, [sic] Processed foods, and Preservatives" in violation of his religious beliefs (the "Denial of Kosher Meal Claim"). (*Id.* at 3). Third, he alleges, Belmont Correctional Institution "does not provide any Religious Services for Moorish/Kemetic practitioners" (the "Denial of Religious Services Claim"). (*Id.*). Plaintiff seeks $1,000,000 per violation and injunctive and declarative relief. (*Id.* at 3).

Defendants filed their Motion for Summary Judgment on September 27, 2018 (Doc. 29). Plaintiff filed a response (Doc. 39), and Defendants filed a reply (Doc. 40). The Motion is now ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

### A. Injunctive and Declaratory Relief

Plaintiff's claims are based on the alleged misconduct of Defendants while he was incarcerated at Belmont Correctional Institution. Subsequent to filing this action, Plaintiff was transferred to Chillicothe Correctional Institution, (*see* Doc. 22), and then transferred again to London Correctional Institution, (*see* Doc. 31 at 2).

Generally, a prisoner's request for injunctive and declaratory relief is moot once he is transferred to a different facility. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("As noted above, any declaratory or injunctive relief that Colvin seeks stemming from his complaint has been mooted by his transfer to a different prison facility."); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) ("Wilson is no longer incarcerated at Mansfield Correctional Institution, where the events that form the basis for his allegations in this case took place. Consequently, any claim for injunctive relief against the defendants in their official capacities is also unavailing."); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("[T]o the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution" where the alleged unconstitutional conduct occurred.). The record does not demonstrate, and Plaintiff does not argue, that the limited exception to this rule applies. *Cf. Demis v. Sniezek*, 558 F.3d 508, 516 (6th Cir. 2009) (holding that a prisoner's release or transfer to another prison will not render his suit for injunctive or declaratory relief moot if: "(1) the challenged action was in its duration too

4

short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." (citation and quotations omitted). Defendants are, therefore, entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief. *See Caruso*, 605 F.3d at 289; *Wilson*, 148 F.3d at 601; *Kensu*, 87 F.3d at 175.

### B. RLUIPA Claims for Monetary Damages

Plaintiff's RLUIPA claims for monetary damages are barred. (*See* Doc. 4 at 2–3 (citing RLUIPA and requesting "$1,000,000 per violation")). "Although RLUIPA permits 'appropriate relief against a government,' the Sixth Circuit and this Court consistently have held that such relief does not extend to monetary damages." *McDougald v. Davis*, No. 2:16-CV-545, 2018 WL 1899229, at *4 (S.D. Ohio Apr. 20, 2018), *report and recommendation adopted*, No. 2:16-CV-545, 2018 WL 2288003 (S.D. Ohio May 18, 2018) (collecting cases). Defendants are, therefore, entitled to summary judgment on Plaintiff's RLUIPA claims for monetary damages. *See id.*

### C. Section 1983 First Amendment Claims for Monetary Damages

#### i. Official Capacity

Plaintiff's § 1983 claims against Defendants in their official capacity fail. "[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009) (citation and ellipsis omitted). Defendants are, therefore, entitled to summary judgment on Plaintiff's § 1983 claims against them in their official capacity. *See id.*

### ii. Individual Capacity

#### a. Defendant Burger

In order to establish liability under § 1983, a plaintiff must prove that each "defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Defendant Burger has presented evidence that he had no personal involvement "with Plaintiff regarding the issues of this case." (Doc. 29-2, ¶ 6). In response, Plaintiff has not alleged or cited any evidence that Defendant Burger was personally involved in any of the underlying events that Plaintiff contends violated the First Amendment.[3] The Undersigned therefore recommends that summary judgment be entered in favor of Defendant Burger on all remaining claims.

#### b. Defendant Potter

##### 1. Religious Headwear Claim

Plaintiff alleges that, on two separate occasions, correctional staff forced him to remove his religious headwear, specifically his fez. However, in his response, he implicitly concedes that Defendant Potter was not personally involved in the events underlying his Religious Headwear Claim. (*See* Doc. 39 at 2 ("Plaintiff will focus on the two issues that directly involve the Defendants; [sic] 1). Denial of Plaintiff's Right to a Kosher diet and 2). Denial of Plaintiff's Right to practice his religion in it's [sic] entirety through Kemetic/Moorish Services.")). Absent evidence of Defendant Potter's personal involvement in compelling him to remove his fez, Plaintiff cannot proceed with his First Amendment claim on this issue. *See Iqbal*, 556 U.S. at

---

[3] Plaintiff implicitly concedes that neither Defendant was personally involved in the events underlying his Religious Headwear Claim. (*See* Doc. 39 at 2 "Plaintiff will focus on the two issues that directly involve the Defendants; [sic] 1). Denial of Plaintiff's Right to a Kosher diet and 2). Denial of Plaintiff's Right to practice his religion in it's [sic] entirety through Kemetic/Moorish Services.")

676. The Undersigned, therefore, recommends granting summary judgment in favor of Defendant Potter on this claim.

## 2. *Denial of Kosher Meal Claim*

Plaintiff alleges that he has been denied kosher meals "as an alternative to both regular meals served to the general population and the vegetarian meals served which both contain harmful Gmo's, [sic] Processed foods, and Preservatives" in violation of his religious beliefs. (Doc. 4 at 3). But again, Plaintiff fails to identify any evidence demonstrating that Defendant Potter was involved in the denial of Plaintiff's request for kosher meals. On April 25, 2016, Plaintiff completed a Request for Religious Accommodation form in which he requested to receive kosher meals consistent with his religious beliefs. (Doc. 29-10 at 23). That request was reviewed by a chaplain, the Accommodation Review Committee, and the Warden, and referred to the Religious Services Administrator for a final decision. (*Id.* at 21–22). The Religious Services Administrator denied the request because, according to him, the prison "provide[d] a reasonable meal accommodation." (*Id.* at 21). Significantly, the available records do not indicate that Defendant Potter was involved at any point in the process that led to the denial of Plaintiff's request. (*See id.* at 22 (signed by Accommodation Review Committee chairperson who was not Defendant Potter)). Because Plaintiff has not presented any evidence that Defendant Potter was personally involved in the denial of his request for kosher meals, Plaintiff cannot proceed with his First Amendment claim on this issue. *See Iqbal*, 556 U.S. at 676. The Undersigned, therefore, recommends granting summary judgment in favor of Defendant Potter on this claim.

### 3. Denial of Religious Services Claim

Plaintiff alleges "that he is being denied the Right to practice his Religion in its entirety [because Belmont Correctional Institution] does not provide any Religious Services for Moorish/Kemetic practitioners." (Doc. 4 at 3). Defendant now moves for summary judgment on Plaintiff's related First Amendment claim, asserting that Plaintiff was denied the opportunity to reserve chapel space for Moorish/Kemetic services consistent with the Ohio Department of Rehabilitation and Correction's ("ODRC") policy which "states that religious services will not be provided until at least five (5) inmates are interested in the services." (Doc. 29 at 10).

"In any free exercise claim, the first question is whether the belief or practice asserted is religious in the plaintiff's own scheme of things and is sincerely held." *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (citation, alteration, and internal quotation marks omitted). "Next, where an inmate challenges prison policies under the Free Exercise Clause, Supreme Court precedent instructs us to follow the standard formulated in *Turner v. Safley*." *Id.* (citation, alteration, and quotations omitted). Under *Turner*:

> four factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a valid, rational connection to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are ready alternatives to the regulation.

*Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citation and internal quotation marks omitted). A defendant bears the burden of demonstrating the first *Turner* factor, and "the prisoner the burden as to the last three *Turner* factors." *Swansbrough v. Martin*, No. 1:14-CV-1246, 2016 WL 11262507, at *3 (W.D. Mich. Oct. 4, 2016), *report and recommendation adopted*, No. 1:14-CV-1246, 2017 WL 64917 (W.D. Mich. Jan. 6, 2017); *see also Overton*, 539 U.S. at 132 (collecting

8

cases) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

The Sixth Circuit "has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services." *Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010) (collecting cases). A prison's requirement that a minimum of five inmates of a particular faith must be interested in forming a faith group before the prison will provide for religious services has a "valid, rational connection to legitimate government interests in maintaining security and allocating prison resources." *Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir. 1999).

Defendants rely on that reasoning to satisfy the first *Turner* factor. (*See* Doc. 29 at 10 ("As previously discussed, budgetary issues have been determined to satisfy the first prong of the *Turner* factors.")). They further emphasize that "other means of practicing [Plaintiff's] religion exist, and have been approved for Plaintiff. Plaintiff was told that he was allowed to order materials that were [compliant] with ODRC policies, or have the information donated to him, and was permitted to practice within the unit without disruption." (*Id.* at 10–11).

In contrast, Plaintiff has not cited to any evidence in the record disproving the validity of the regulation relied on by Defendants. *Cf. Overton*, 539 U.S. at 132 (collecting cases) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."). Indeed, he "points to no restrictions on his ability to practice [his Moorish/Kemetic faith] privately, read [Moorish-Kemetic] literature, or correspond with other practitioners of the [Moorish/Kemetic] faith." *Caruso*, 605 F.3d at 291–92 (citing *Spies*, 173 F.3d at 404–05 (concluding that an inmate's ability to "meditate privately in the chapel, correspond with fellow believers, and consult individually with a personal minister"

9

demonstrated that he had alternative ways of exercising his religious rights)). The Undersigned, therefore, recommends that Plaintiff's First Amendment claim be denied with respect to this issue.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED**.

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**Procedure on Objections to Order**

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This Order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

IT IS SO ORDERED.


Date:   June 19, 2019                                      /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE