# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SAKHU MAA TEM HERU,**

      **Plaintiff,**

   v.                                    **Civil Action 2:17-cv-658**
                                            **Chief Judge Edmund A. Sargus, Jr.**
                                            **Magistrate Judge Jolson**

**STATE OF OHIO, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

On August 13, 2019, this matter was recommitted to the Undersigned to address "new arguments, and facts in support of such arguments" raised in Plaintiff's Objection (Doc. 47) to the Undersigned's June 16, 2019 Report and Recommendation (Doc. 41), recommending granting Defendants' Motion for Summary Judgment (Doc. 29). The Undersigned has considered the new arguments and new facts presented by Petitioner in his Objection and reaffirms her earlier Report and Recommendation (Doc. 41). The Undersigned, therefore, **RECOMMENDS** granting Defendants' Motion for Summary Judgment (Doc. 29).

## I. BACKGROUND

The Undersigned has previously summarized the relevant background in her Report and Recommendation. (*See* Doc. 41 at 1–3). Relevant here, Plaintiff alleges that correctional officers at the Belmont Correctional Institution (1) prevented him from wearing religious headwear, (2) denied his requests for kosher meals, and (3) denied his request to hold Moorish/Kemetic religious services. He seeks, among other things, injunctive relief under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The Undersigned

recommended dismissing his request for injunctive relief because it had been mooted by his transfer to Chillicothe Correctional Institution and then London Correctional Institution. (Doc. 41 at 4–5).

In his Objection to the Report and Recommendation, Plaintiff raised new facts and arguments in support of his opposition to Defendants' Motion for Summary Judgment, including his request for injunctive relief. (Doc. 47). This matter was recommitted to the Undersigned accordingly.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.     DISCUSSION

Plaintiff raises two new arguments in his Objection. (Doc. 47). First, he argues that that the Undersigned failed to address his request for declaratory judgment based on his alleged status as a citizen of Mexico whose rights are protected under the Treaty of Guadalupe Hidalgo. (*Id.* at 2–6). Second, he asserts that he can now submit evidence showing that prison officials have denied similar requests for religious accommodation since he was transferred to the London Correctional Institution and that his claim for injunctive relief is, therefore, not moot. (*Id.* at 6–8). The Undersigned addresses each of these arguments in turn.

At the outset of this case, Plaintiff raised a number of claims challenging his 2008 state court criminal conviction. (Doc. 5 at 1–2). He supplemented his initial complaint with additional claims under the First Amendment and RLUIPA. (*See generally* Doc. 4; Doc. 5 at 1–2). In screening his complaint, Judge Lioi explained, "Plaintiff's complaint and amended complaint are largely incomprehensible. They are composed almost entirely of meaningless rhetoric, with random citations to various legal and non-legal sources." (Doc. 5 at 2). Indeed, many of the arguments raised by Plaintiff are similar to those frequently raised by sovereign citizens. (*See, e.g.*, *id.* ("Plaintiff states that he is an indigenous Native American with Olmec, Ute, Cherokee, and Blackfoot ancestry, and also claims 'free Moorish' ancestry. Plaintiff claims that he 'declared his inalienable right as an indigenous person to a status separate and distinct from the 14th Amendment corporate citizen.'")). The only claims that survived Judge Lioi's initial review in this case were Plaintiff's First Amendment and RLUIPA claims, which were subsequently transferred to this Court. (*Id.* at 6–8).

Plaintiff now argues that his alleged status as a Mexican citizen entitles him to certain protections under the Treaty of Guadalupe Hidalgo and that he is, therefore, entitled to declaratory

3

relief on his First Amendment and RLUIPA claims. But Plaintiff does not cite, and the Undersigned has not been able to find, any authority or precedent to support this argument. Any religious exercise claims based on the Treaty of Guadalupe Hidalgo are without merit, if not frivolous. Plaintiff's request for declaratory relief should be denied accordingly.

Plaintiff's new argument regarding his request for injunctive relief is similarly without merit. This case was filed in February 2017, and the operative complaint concerns the actions of certain correctional staff at the Belmont Correctional Institution in 2016 and 2017. Plaintiff now requests injunctive relief based on the conduct of different defendants at a different correctional institution for a different time period. (*See* Doc. 47 at 6–8 (alleging four denials of religious accommodation requests by London Correctional Institution staff in 2018 and 2019)). It is well-established that a complaint cannot be amended in a brief opposing a motion for summary judgment. *Tucker v. Union on Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *see also Hubbard v. Select Portfolio Servicing, Inc.*, No. 16-CV-11455, 2017 WL 3725475, at *3 (E.D. Mich. Aug. 30, 2017), *aff'd*, 736 F. App'x 590 (6th Cir. 2018), *reh'g denied* (June 28, 2018) ("Hubbard cannot amend his complaint, which is the operative pleading in this matter, by simply including new factual allegations in his briefing in opposition to the motions for summary judgment."). And that is what Plaintiff has attempted to do here. The new facts and arguments raised by Plaintiff, therefore, do not alter the Undersigned's conclusions set forth in her Report and Recommendation.

Filing a new complaint, rather than a motion to amend, is the appropriate course of action for Plaintiff. Any motion to amend would be subject to Rule 16's good cause requirement, which Plaintiff cannot satisfy here. "[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial

order." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007). The Court must also consider "the potential prejudice to the nonmovant." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

Discovery closed on August 20, 2018, and dispositive motions were due on September 20, 2018. (Doc. 27). Now, almost a year after those deadlines, and two and a half years after this case was filed, Plaintiff seeks to bring new claims against new defendants at a new correctional institution for a new time period after Defendants have filed their Motion for Summary Judgment. While the record does not contain any evidence of Plaintiff's diligence in attempting to meet the deadlines in the Court's pretrial order, it does make clear that Defendants would be prejudiced if Plaintiff were permitted to amend his complaint after the filing of their Motion for Summary Judgment. They would be required to investigate and conduct discovery and draft a new motion for summary judgment regarding new claims of which they had no notice. Amendment of the operative complaint at this stage of the case would, therefore, be inappropriate under the Rules.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** granting Defendants' Motion for Summary Judgment (Doc. 29).

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  September 16, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE